IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-03208-PAB-MLC
(Consolidated with Civil Action No. 17-cv-00041-PAB-MLC)

_____

Civil Action No. 16-cv-03208-PAB-MLC

PATRICIA MISCHEK, individually and on behalf of all persons similarly situated,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign
corporation,

     Defendant.

_____

Civil Action No. 17-cv-00041-PAB-MLC

SKUYA CHRISTENSEN, individually and on behalf of all persons similarly situated,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign
corporation,

     Defendant.

_____

# AMENDED ORDER[1]

_____

This matter is before the Court on State Farm Mutual Automobile Insurance

---

[1]This order is amended to correct a clerical error on page 21. The original order erroneously stated that the "parties' accord and satisfaction as to Ms. Mischek's claim for UIM benefits is not enforceable as contrary to public policy." The order has been corrected to state that the parties' accord and satisfaction is "not unenforceable." The original order has not otherwise been modified.

Company's Motion for Summary Judgment Re: (1) Enforcement of Settlement; and (2) Accord and Satisfaction [Docket No. 58]. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[2]

## I. BACKGROUND[3]

This is a consolidated action for underinsured motorist ("UIM") benefits. Plaintiffs Patricia Mischek and Skuya Christensen were insured by defendant State Farm Mutual Automobile Insurance Company ("State Farm") when they were involved in separate collisions with underinsured motorists. Both plaintiffs submitted claims for UIM benefits to State Farm. After the parties settled those claims, the Colorado Supreme Court held, in *Calderon v. American Mutual Family Insurance Co.*, 383 P.3d 676 (Colo. 2016), that Colo. Rev. Stat. § 10-4-609(1)(c) bars insurance companies from reducing the payment owed under an insured's uninsured/underinsured motorist ("UM/UIM") coverage by amounts paid out under the insured's medical payments ("MedPay") coverage.[4] Relying on *Calderon*, plaintiffs filed suit alleging that State Farm had breached the terms of their insurance contracts by unlawfully reducing their UM/UIM benefits by the amount of MedPay benefits awarded following their collisions. The following

---

[2]The parties have filed a joint motion requesting a hearing on the pending dispositive motions in this case. Docket No. 80. After consideration of the parties' briefs, the Court has determined that oral argument would not assist its resolution of the issues presented on summary judgment. Accordingly, the parties' motion is denied.

[3]The following facts are undisputed unless otherwise noted.

[4]MedPay coverage provides for the payment of medical and funeral expenses when a covered individual is injured in an accident, regardless of who is at fault. *See Medical Payments Coverage*, State Farm, https//www.statefarm.com/insurance/auto/coverage-options/medical-payments-coverage (last visited Mar. 20, 2018).

undisputed facts are material to each plaintiff's claims.

## A.  Patricia Mischek

Prior to the events giving rise to this lawsuit, Ms. Mischek (formerly, Ms. Eheart) purchased an automobile policy from State Farm that included (1) UIM coverage up to $100,000 per person and (2) MedPay Coverage up to $5,000 per person.  Docket No. 52 at 4-5, ¶ 1.  The section of the policy pertaining to UIM coverage contained the following non-duplication provision:

> We will pay compensatory damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle. . . . We will not pay any damages . . . that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

Docket No. 52-8 at 19; Docket No. 52 at 5, ¶ 4.[5]

On June 14, 2013, Ms. Mischek was involved in a car accident with an underinsured motorist.  Docket No. 52 at 6, ¶ 7.  She submitted claims for MedPay and UIM benefits to State Farm pursuant to the terms of her insurance policy.  *Id.*  On or about October 25, 2013, Ms. Mischek received a letter from State Farm informing her that State Farm had exhausted her MedPay coverage by paying out $5,000 for medical expenses incurred as a result of the accident.  *Id.* at 6, ¶ 8; Docket No. 55-5 at 3.[6]

On March 17, 2015, Ms. Mischek's attorney sent State Farm a letter demanding

---

[5]Ms. Mischek objects to defendant's "selective citation and quotation of the language" in this paragraph but does not otherwise dispute the existence or validity of the insurance policy.  Docket No. 71 at 4.

[6]Ms. Mischek admits to receiving the letter and states that the letter "speaks for itself."  Docket No. 71 at 4.  However, the parties do not appear to have made the letter part of the record on summary judgment.

the "UNDERINSURED MOTORIST POLICY LIMITS for a full and final settlement of all claims which she may have arising out of the June 14, 2013, incident." Docket No. 52 at 7, ¶ 11; Docket No. 53-6 at 13. On May 8, 2015, State Farm offered Ms. Mischek $64,000 to settle her UIM claim. Docket No. 52 at 8, ¶ 13. State Farm explained that the offer accounted for Ms. Mischek's $25,000 settlement with the underinsured motorist and the $5,000 paid in MedPay benefits. *Id.*; Docket No. 53-2 at 3. On the same day, State Farm sent a letter to Ms. Mischek's attorney "confirm[ing State Farm's] settlement offer in the amount of $64,000." Docket No. 52 at 8, ¶ 13; Docket No. 53-2 at 3; Docket No. 53-9. On May 21, 2015, Ms. Mischek's attorney made a counter-offer in the amount of $95,000, to which State Farm responded with an offer of $67,000, "inclusive of all damages." Docket No. 52 at 8, ¶¶ 14-15; Docket No. 53-10. After Ms. Mischek's attorney demanded $90,000, State Farm made a final offer in the amount of $70,531.89. Docket No. 52 at 8, ¶¶ 16-17. Ms. Mischek accepted the offer on May 29, 2015, *id.*, and on June 1, 2015, State Farm sent a letter to her attorney stating, "It is our understanding Ms. Eheart has accepted our offer of $70,531.89 inclusive of all liens." *Id.*, ¶ 18; Docket No. 53-11. Ten days later, on June 11, 2015, State Farm sent another letter confirming the parties' settlement and enclosing payment in the amount of $70,531.89. Docket No. 52 at 8-9, ¶ 20. The letter states:

> Enclosed is our payment in the amount of $70,531.89 for settlement of your Underinsured Motorist Claim. There is no release requested in exchange for our payment. However, this will confirm our agreement settles any and all claims under the Underinsured Motorist Coverage with State Farm arising out of the accident on June 14, 2013.

Docket No. 53-13. The check stub for one of the checks enclosed with the letter bears the notation "Full and final UIM settlement." Docket No. 55-3 at 2. Ms. Mischek did not

return State Farm's payment or challenge the amount of the settlement.  Docket No. 52 at 9, ¶ 22; Docket No. 71 at 6.

On November 7, 2016, the Colorado Supreme Court issued its decision in *Calderon*.  *See Calderon*, 383 P.3d 676.  On November 29, 2016, Ms. Mischek filed her complaint in the District Court for Larimer County, Colorado.  Docket No. 1-1 at 1.  The case was removed to this Court on December 30, 2016.  Docket No. 1.  In her first amended complaint, Ms. Mischek asserts a claim for breach of contract on behalf of herself and a class of persons "(a) who were covered for UM/UIM under automobile policies issued by the Defendant in the State of Colorado; (b) who presented claims for payment of Colorado UM/UIM coverage for covered injuries occurring on or after January 1, 2008; and (c) who received UM/UIM payments in a reduced amount due to the Defendant's application of its Med-Pay Reduction Policy."  Docket No. 5 at 3, ¶ 16.  Ms. Mischek alleges that State Farm "breached the contract of insurance by applying its Med-Pay Reduction Policy to avoid paying statutorily-mandated UM/UIM benefits to Plaintiff and other class members."  *Id.* at 5, ¶ 26.  She seeks "payment of all UM/UIM benefits due and owing," as well as interest, fees, and costs.  *Id.* at 5.

### B.  Skuya Christensen

On November 6, 2014, Ms. Christensen was involved in a car accident with an underinsured motorist.  Docket No. 52 at 9, ¶ 23.  At the time of the accident, she was covered under two automobile insurance policies issued by State Farm.  *Id.* at 5, 9, ¶¶ 2-3, 25-26.  Those policies included UIM motorist coverage of up to $100,000 per person and MedPay coverage of up to $5,000 per person.  *Id.* at 5, ¶¶ 2-3.  Ms.

Christensen filed claims for MedPay benefits and UIM benefits under the policies. *Id.* at

9, ¶ 23. On April 9, 2015, State Farm sent a letter to Ms. Christensen's attorney stating

that Ms. Christensen's MedPay coverage limits had been exhausted due to a $5,000

final payment sent by State Farm on April 9. *Id.*, ¶ 25; Docket No. 53-17. On

November 19, 2015, State Farm sent a letter to Ms. Christensen's attorney stating: "We

have completed the evaluation of Ms. Christensen's Underinsured Injury claim. Please

contact us as soon as possible so that we may discuss settlement." Docket No. 52 at

10, ¶ 28; Docket No. 53-19. Four days later, State Farm sent a letter confirming its

"settlement offer in the amount of $1,000.00." Docket No. 52 at 10, ¶ 29; Docket No.

53-20. On December 13, 2015, Ms. Christensen's attorney acknowledged receipt of

State Farm's "November 23, 2015 letter offering $1,000.00 to settle Ms. Christensen's

claim" and requested further information regarding how State Farm calculated the offer.

Docket No. 52 at 10, ¶ 30; Docket No. 53-21. State Farm responded with a letter on

December 22, 2015 explaining the basis for the settlement amount, including the

$5,000.00 off-set for MedPay benefits that Ms. Christensen had already received.

Docket No. 52 at 10, ¶ 31; Docket No. 53-22.[7] On January 4, 2016, Ms. Christensen's

attorney sent State Farm a letter challenging State Farm's benefits calculation and

asking if it accounted for future pain and suffering, future treatment, permanency, and

interest. Docket No. 52 at 11, ¶ 32; Docket No. 53-23. The letter further requested that

State Farm "provide an updated evaluation" and "tender the benefits [it had] determined

[were] owed at [that] time." Docket No. 53-23. State Farm made two additional offers

---

[7]Ms. Christensen denies that the letters between her attorney and State Farm
referred to State Farm's offers of payment as "settlement" offers. Docket No. 69 at 3.

of $6,000 and $10,016.50 to settle Ms. Christensen's UIM claim. Docket No. 52 at 11, ¶ 33. On February 1, 2016, Ms. Christensen accepted State Farm's ultimate offer of $16,000. Docket No. 52 at 11, ¶ 34; Docket No. 55-4 at 4.[8] That same day, State Farm sent a letter to Ms. Christensen's attorney confirming that they had "agreed to settle [Ms. Christensen's] underinsured motorist claim for $16,000, inclusive of all liens" and enclosing payment. Docket No. 52 at 11, ¶ 35; Docket No. 53-24. Ms. Christensen does not dispute that she deposited State Farm's check without challenging the amount. Docket No. 52 at 11, ¶ 36; Docket No. 69 at 3.

On November 10, 2016, three days after the issuance of the *Calderon* decision, Ms. Christensen filed her complaint in the District Court for the City and County of Denver. Civil Action No. 17-cv-00041, Docket No. 1-1. On January 4, 2017, State Farm removed the case to this Court. Civil Action No. 17-cv-00041, Docket No. 1. Plaintiff seeks compensatory damages for breach of contract and a declaratory judgment that State Farm wrongfully denied UM/UIM benefits to plaintiff and other similarly situated current and former insureds of State Farm. Civil Action No. 17-cv-00041, Docket No. 4 at 6.

On May 31, 2017, Ms. Christensen filed a motion for partial summary judgment requesting a ruling that the Colorado Supreme Court's decision in *Calderon* is retroactive to January 1, 2008. Docket No. 39. On June 20, 2017, State Farm moved for summary judgment on the ground that *Calderon* does not apply retroactively to support Ms. Christensen's and Ms. Mischek's claims for breach of contract and

---

[8]Ms. Christensen denies that the parties reached an agreement to settle her UIM claim. Docket No. 69 at 3.

declaratory relief.  Docket No. 52.  That same day, State Farm filed a second motion for summary judgment arguing that plaintiffs' claims are barred by their settlements with State Farm and/or by accord and satisfaction.  Docket No. 58.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

When the party moving for summary judgment bears the ultimate burden of persuasion at trial, it must "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  This "shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery."  *Id.*

## III. ANALYSIS

State Farm argues that it is entitled to summary judgment because the parties reached an accord and satisfaction regarding plaintiffs' claims for UIM benefits. Docket No. 58 at 7. Because accord and satisfaction is an affirmative defense, *Tinley v. Poly-Triplex Techs., Inc.*, No. 07-cv-01136-WYD-KMT, 2009 WL 812150, at *11 (D. Colo. Mar. 26, 2009), State Farm must provide credible evidence establishing each essential element of the defense. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

"An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty." *R.A. Reither Constr., Inc. v. Wheatland Rural Elec. Ass'n*, 680 P.2d 1342, 1344 (Colo. App. 1984). The obligor's "[p]erformance of the accord discharges the original duty." *Id.* To constitute an accord and satisfaction under Colorado law,

> the money should be offered in full satisfaction of the demand, and be
> accompanied by such acts and declarations as amount to a condition that
> the money, if accepted, is accepted in satisfaction; and it must be such
> that the party to whom it is offered is bound to understand therefrom that,
> if he takes it, he takes it subject to such conditions.

*Hudson v. Am. Founders Life Ins. Co. of Denver*, 377 P.2d 391, 396 (Colo. 1962). The Tenth Circuit has identified the elements of an accord and satisfaction as follows: "(1) a bona fide dispute over an unliquidated claim amount; (2) a check tendered in full settlement of the claimed amount; and (3) acceptance of the payment." *Valley Asphalt, Inc. v. Stimpel Wiebelhaus Assocs.*, 3 F. App'x 838, 839-40 (10th Cir. 2001) (unpublished) (citing case law from Utah and the Ninth Circuit, as well as the Restatement (Second) of Contracts, § 281). Whether these elements are present is

9

ordinarily a question of fact. *See R.A. Reither Constr., Inc.*, 680 P.2d at 1344; *see also Federal Lumber Co. v. Wheeler*, 643 P.2d 31, 37 (Colo. 1981). However, when the relevant facts are not in dispute, the existence of an accord and satisfaction becomes a question of law. *Black v. Denver U.S. Nat'l Bank*, 362 F.2d 38, 41 (8th Cir. 1966); *Guldager v. Rockwell*, 24 P. 556, 557-58 (Colo. 1890); Eric C. Surette, American Jurisprudence § 56 (2d ed. 2018).

State Farm contends that plaintiffs released their claims for UIM benefits when they accepted payment from State Farm. Docket No. 58 at 9.

The Court finds that the material facts are not in dispute. Both plaintiffs contested the amount State Farm initially offered to pay them under their UM/UIM coverages. *See* Docket No. 52 at 8, 10-11, ¶¶ 14, 30, 32. Plaintiffs, through their attorneys, subsequently engaged in negotiations with State Farm over the amount of UM/UIM benefits owed. *Id.* at 8, 10-11, ¶¶ 14, 16, 30, 32, 33. Those negotiations culminated in State Farm remitting payment to "settle" plaintiffs' UIM claims. *Id.* at 8-9, 11, ¶¶ 20, 21, 35. Both plaintiffs accepted State Farm's payment without challenging the amount or attempting to reserve their rights. *Id.* at 9, 11, ¶¶ 22, 36. In fact, there is no evidence that plaintiffs engaged in any further communications with State Farm until they filed their complaints in the present case.

Based on these facts, the Court finds that State Farm has established the elements of accord and satisfaction as to both Ms. Mischek and Ms. Christensen. The parties had a genuine disagreement over the amount of benefits owed to plaintiffs under their UIM coverages. Both plaintiffs accepted the payments sent by State Farm.

The evidence further demonstrates that the parties intended to negotiate a full

10

settlement of plaintiffs' UIM claims, and that State Farm's final payments were offered in settlement of those claims. For example, Ms. Mischek's attorney initiated the settlement negotiations with State Farm by demanding the UIM policy limits "for a full and final settlement of all claims which she may have arising out of the June 14, 2013, incident." Docket No. 52 at 7, ¶ 11; Docket No. 53-6 at 13. State Farm subsequently made a series of offers to Ms. Mischek that it specifically referred to as "settlement" offers. *See, e.g.*, Docket Nos. 53-9, 53-10. State Farm's final letter on June 11, 2015 enclosed payment "in the amount of $70,531.89 for settlement of [Ms. Mischek's] Underinsured Motorist Claim." Docket No. 53-13. The letter further stated that, although there would be "no release requested in exchange for [State Farm's] payment," "this will confirm our agreement settles **any and all claims** under the Underinsured Motorist Coverage with State Farm arising out of the accident on June 14, 2013." Docket No. 53-13 (emphasis added). On these facts, no reasonable juror could find that Ms. Mischek was not "bound to understand" that acceptance of State Farm's June 11, 2015 payment constituted a settlement of her UIM claim. *Hudson*, 377 P.2d at 396; *see also R.A. Reither*, 680 P.2d at 1343-44 (holding that plaintiff's claims were barred by accord and satisfaction where plaintiff deposited checks from defendant bearing notations "Balance" and "Balance of contract" that were also accompanied by letter stating that defendant was "willing to settle the matter on the basis of [plaintiff] accepting the checks it presently has received").

The evidence pertaining to Ms. Christensen leads to a similar conclusion. Ms. Christensen's attorney engaged in extensive back-and-forth negotiations with State Farm over the benefits owed under Ms. Christensen's UIM coverage. On November

23, 2015, State Farm sent a letter confirming an initial "settlement offer in the amount of $1,000." Docket No. 53-20. Ms. Christensen's attorney subsequently inquired into the basis of the offer, asking on two separate occasions whether State Farm's benefits calculations accounted for various categories of damages, including present and future pain and suffering, future treatment, permanency, impairment, and interest. *See* Docket Nos. 53-21, 53-23. State Farm's final letter to Ms. Christensen's attorney stated that the parties had "agreed to settle [Ms. Christensen's] underinsured motorist claim for $16,000, inclusive of all liens," and enclosed payment for that amount. Docket No. 53-24. As with Ms. Mischek, the Court finds that Ms. Christensen was bound to understand from this correspondence that acceptance of the $16,000 constituted a full settlement of her UIM claim.

Plaintiffs oppose State Farm's entitlement to summary judgment on three grounds.[9] First, plaintiffs contend that the doctrine of accord and satisfaction is inapplicable because the parties, by negotiating payment for plaintiffs' UIM claims, were simply complying with their existing duties under the insurance policies. Plaintiffs rely specifically on a provision in their insurance policies requiring State Farm and the insured to agree on the "compensatory damages that the insured is legally entitled to collect." Docket No. 52-8 at 20; Docket No. 53-1 at 21; *see also* Docket No. 69 at 7; Docket No. 71 at 11. However, plaintiffs do not cite any authority for the proposition that this language precludes application of the doctrine of accord and satisfaction. Plaintiffs rely on a definition of accord and satisfaction requiring an agreement to

---

[9]The final ground – that any purported release is unenforceable as contrary to public policy – is asserted only by Ms. Mischek. *See* Docket No. 71 at 12.

"discharge each other's obligations under an old contract and perform under a new

contract." *See* Docket No. 69 at 7 (quoting *Strickland Tower Maintenance, Inc. v. AT&T*

*Communications, Inc.*, 128 F.3d 1422, 1428 (10th Cir. 1997)); Docket No. 71 at 10-11

(same). Plaintiffs suggest that, because the parties negotiated payment pursuant to the

terms of the insurance policies, there was no discharge of their existing obligations

through substitute performance. But this argument misunderstands the nature of

defendant's accord and satisfaction defense. That defense is as follows: Plaintiffs'

insurance policies obligated State Farm to pay UIM benefits. State Farm disputed the

amount of benefits that plaintiffs were claiming under the policies. Plaintiffs agreed to a

compromise amount, thereby discharging any obligation State Farm might have had to

pay the full amount of benefits plaintiffs were claiming. These facts comport with

plaintiffs' definition of accord and satisfaction. The "obligation" discharged under the

insurance policies was not the obligation to negotiate a settlement, but rather the

obligation to remit a certain amount in UIM benefits. Courts have found accord and

satisfaction under similar circumstances. *See, e.g.*, *Hemingway v. State Farm Fire &*

*Cas. Co.*, 589 N.Y.S. 2d 956, 956-57 (N.Y. Sup. Ct. App. Div. 1992) (finding accord and

satisfaction where plaintiffs accepted payment from insurance company that was equal

to amount determined through use of dispute settlement procedure contained in

insurance policy). Moreover, plaintiffs' insurance policies did not, as plaintiffs contend,

require agreement as to the amount of benefits owed. In the event that the parties

could not reach an agreement on the amount of benefits, the policies provided that "the

***insured*** shall file a lawsuit." Docket No. 52-8 at 20; Docket No. 53-1 at 21.

Plaintiffs contend that their acceptance of State Farm's checks was not

"conditioned upon a full release" of their claims. Docket No. 69 at 8; Docket No. 71 at

11. As discussed above, however, this argument is belied by the clear language in the

letters accompanying payment. The letter enclosing Ms. Mischek's check stated:

"[T]his will confirm our agreement settles any and all claims under the Underinsured

Motorist Coverage with State Farm arising out of the accident on June 14, 2013."

Docket No. 53-13. The check stub also bore the notation "Full and final UIM

settlement." Docket No. 55-3 at 2. Similarly, Ms. Christensen's final letter from State

Farm stated that the parties had "agreed to settle [Ms. Christensen's] underinsured

motorist claim for $16,000," which was the same amount enclosed as payment. Docket

No. 53-24. That State Farm did not require Ms. Mischek to sign a release in exchange

for payment is not determinative. Courts have found the elements of accord and

satisfaction to be established even in the absence of a formal release. *See, e.g.*, *R.A.*

*Reither Constr., Inc.*, 680 P.2d at 1343-44; *see also Los Atrevidos v. Preferred Risk Life*

*Ins. Co.*, 755 P.2d 61, 62-63 (N.M. 1988) (stating that Colorado law "does not require

the tendered offer to be placed in a particular location or communicated in a particular

manner, so long as the recipient understands its terms"). Similarly, any suggestion that

there was no accord and satisfaction because the parties' communications did not

include the words "full and final settlement" is unavailing.[10] Colorado law does not

require a party to use particular words to communicate an offer of settlement. *Los*

_____

[10]The Court notes that such an argument would only be relevant to Ms. Christensen's claims. Ms. Mischek's check stub bore the notation "Full and final UIM settlement," Docket No. 55-3 at 2, and Ms. Mischek's attorney initiated negotiations with State Farm by requesting the policy limits "for a full and final settlement" of her claims. Docket No. 52 at 7, ¶ 11. Ms. Mischek's unsupported assertion that the words on the check stub have "no legal effect or consequence" is unpersuasive. Docket No. 71 at 5.

*Atrevidos*, 755 P.2d at 62-63; *see also R.A. Reither Constr., Inc.*, 680 P.2d at 1343-44 (finding accord and satisfaction where defendant stated it was "willing to settle the matter on the basis of [plaintiff] accepting the checks it presently has received" (alteration omitted)). The applicable test is whether "the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such conditions." *Pitts v. Nat'l Indep. Fisheries Co.*, 206 P. 571, 571 (Colo. 1922). In this case, State Farm clearly indicated that it was remitting payment in order to "settle" plaintiffs' UIM claims. Given that "settle" means "[t]o end or resolve" or "to bring to a conclusion," *Settle*, Black's Law Dictionary (10th ed. 2014), inclusion of the words "full and final" was unnecessary.

Plaintiffs' citations to *Western Air Lines v. Hollenbeck*, 235 P.2d 792 (Colo. 1951), and *Conditioned Air Co. v. Post*, 513 P.2d 215 (Colo. App. 1973) (unpublished), do not alter this conclusion. In both cases, there was evidence specifically undermining any inference that the parties had intended to settle their claims. In *Western Air Lines*, the parties' communications did not include any language indicating that the defendant's payment was being offered to settle the plaintiff's claims for back pay. 235 P.2d at 797. In fact, the defendant's statements suggested the possibility of further payment. *Id.* Likewise, in *Conditioned Air Co.*, the court held that a lien claimant's acceptance of checks "bearing acknowledgment of payment in full" did not establish the property owner's defense of accord and satisfaction where the claimant "testified that the proceeds of the checks were applied on the account in accordance with the prior agreement of the parties and that after such application, the amount claimed remained unpaid." 513 P.2d at 217. Plaintiffs here have presented no evidence that the parties

understood State Farm's payments to constitute anything other than a final settlement of plaintiffs' UIM claims. Moreover, to the extent plaintiffs assert that the settlements did not encompass their current claims for UIM benefits unlawfully withheld pursuant to the MedPay setoff, *see* Docket No. 69 at 8; Docket No. 71 at 11, the Court finds plaintiffs' argument unavailing. Plaintiffs accepted payments from State Farm to settle their claims for UIM benefits. These are the same benefits plaintiffs are now suing to recover. Because plaintiffs were aware at the time of settlement that State Farm had reduced its initial settlement offers by the amount of MedPay benefits previously remitted, plaintiffs are not permitted to reopen their claims merely because there has been a favorable development in the law. *See Merrill v. Utah Labor Comm'n*, 223 P.3d 1099, 1103 (Utah 2009) ("The parties to a settlement each bear the risk of a subsequent change in or clarification of the law – a risk that could cut either way."); *Krantz v. Univ. of Kan.*, 21 P.3d 561, 569 (Kan. 2001) ("A subsequent change in the law or a subsequent court decision concerning the law will not support rescission of a previously made contract or settlement agreement."); *cf. Jones v. Ferguson Pontiac Buick GMC, Inc.*, 374 F. App'x 787, 788-89 (10th Cir. 2010) (unpublished) (affirming district court's ruling that simple change in the law did not constitute grounds for relief from judgment under Fed. R. Civ. P. 60(b)).

Ms. Mischek argues that, even assuming she agreed to settle her UIM claim with State Farm, such an agreement should not be enforced because it is both contrary to public policy and inconsistent with Colo. Rev. Stat. § 10-4-609(1)(c). Docket No. 71 at 12-13. Specifically, Ms. Mischek asserts that longstanding public policy in Colorado "prohibits dilution of UM/UIM coverage by insurance companies in the form of certain

16

setoffs," *id.* at 13, and that the parties' agreement violates Colo. Rev. Stat. § 10-4-609(1)(c) as interpreted by the Colorado Supreme Court in *Calderon*.

Two courts in this district recently addressed identical arguments. In *Archuleta v. USAA Cas. Ins. Co.*, No. 17-cv-00191-RBJ, 2017 WL 3157947 (D. Colo. July 25, 2017), the plaintiff asserted that his insurer had unlawfully reduced his UM/UIM benefits by the $5,000 in MedPay benefits it had already paid out, pursuant to a non-duplication provision in the plaintiff's insurance policy. *Id.* at *1. After the Colorado Supreme Court issued its decision in *Calderon*, the plaintiff brought suit seeking the recovery of the UM/UIM benefits allegedly withheld. *Id.* The Court granted the insurer's motion for judgment on the pleadings, holding that the plaintiff's release agreement barred his claims. *Id.* at *1,*3. In reaching that determination, the court rejected the plaintiff's argument that the release agreement was unenforceable as contrary to public policy. *Id.* at *1-2. The Court found that nothing prohibited the plaintiff from accepting less than the amount of his UM/UIM coverage and that enforcement of the parties' settlement agreement was consistent with Colorado's public policy favoring the settlement of disputes. *Id.*

Likewise, in *Zevallos v. Allstate Property & Cas. Co.*, No. 17-cv-00189-RM-CBS, 2017 WL 3242231 (D. Colo. July 28, 2017), the plaintiff sought $5,000 in UM/UIM benefits allegedly withheld by her insurer based on MedPay benefits already paid. *Id.* at *2. The assigned magistrate judge recommended that the district court grant the defendant's motion for judgment on the pleadings on the basis of a release agreement entered into by the plaintiff. *Id.* at *6. The magistrate judge concluded that the agreement was not rendered unenforceable by Colo. Rev. Stat. § 10-4-609(1)(c) or

public policy because: (1) "there is no statutory bar against Plaintiff's voluntary waiver of her right to UM/UIM benefits without setoff for MedPay benefits"; and (2) the rule rendering contract provisions void when they contravene public policy does not apply to an individual's voluntary decision to release her claims. *Id.* at *3-4.

The Court finds the reasoning in these cases persuasive and adopts it here. As the magistrate judge noted in *Zevallos*, "statutory rights may be waived." *Klein v. State Farm Mut. Auto. Ins. Co.*, 948 P.2d 43, 46-47 (Colo. App. 1997), *as modified on denial of reh'g* (May 29, 1997). The question is whether "the legislative purpose [would be] thwarted if the statute is not applied" in this case." *First Interstate Bank of Denver, N.A. v. Central Bank & Trust Co. of Denver*, 937 P.2d 855, 862 (Colo. App. 1996). There is nothing in either Colo. Rev. Stat. § 10-4-609(1)(c) or *Calderon* that precludes a party from waiving his or her right to UM/UIM benefits without a MedPay setoff. *See* Colo. Rev. Stat. § 10-4-609(1)(c); *Calderon*, 383 P.3d 676; *see also Zevallos*, 2017 WL 3242231, at *3. Accordingly, there is no evidence that enforcement of the parties' accord and satisfaction in this case would undermine the legislature's purpose in enacting § 10-4-609(1)(c). *See First Interstate Bank of Denver, N.A.*, 937 P.2d at 862 (holding that parties' agreement was enforceable even though inconsistent with state statute of repose where General Assembly did not "preclude or restrict the parties' ability to waive the statute of repose").[11]

---

[11]Contrary to plaintiff's suggestion, *Loffland Brothers Co. v. Industrial Claim Appeals Panel of the State of Colorado*, 770 P.2d 1221 (Colo. 1989), does not establish a blanket rule that "a settlement agreement is unenforceable to the extent it is inconsistent with statutes." Docket No. 71 at 13; *see Archuleta*, 2017 WL 3157947, at *2 (noting that *Loffland* "does not hold that Colorado public policy generally invalidates agreements releasing legal claims to compensation"). The portion of *Loffland Brothers*

Moreover, enforcement of the parties' agreement would not undermine public policy.  Ms. Mischek contends that "Colorado has a deep-seated interest" in ensuring that individuals injured by uninsured or underinsured drivers are "fully compensated for their injuries."  Docket No. 71 at 12.  Plaintiff relies on Colorado cases holding that setoffs from UM/UIM coverage are void as against public policy.  But each of these cases addressed the validity of the insurance policy itself, not the parties' settlement of a claim for benefits.  *See, e.g.*, *Calderon*, 383 P.3d at 679 (holding that insurance policy was unenforceable to the extent that it purported to allow setoff for MedPay benefits); *Barnett v. Am. Family Mut. Ins. Co.*, 843 P.2d 1302, 1305 (Colo. 1993) (holding that clause in insurance policy permitting setoffs for SSDI benefits was void in contravention of public policy); *Newton v. Nationwide Mut. Fire Ins. Co.*, 594 P.2d 1042, 1043 (Colo. 1979) (holding provision in insurance policy permitting setoff of UIM coverage for amounts payable under personal injury protection to be void as against public policy).  As the court in *Archuleta* pointed out, the plaintiff "lawfully could have accepted less than the amount of his UIM coverage, or he could have held out and conceivably obtained more than this coverage."  2017 WL 3157947, at *1.  To hold otherwise "would put an end to settlement negotiations for UM/UIM claims" and undermine Colorado public policy favoring "voluntary agreements to settle legal disputes."  *Id.* at *2 (quoting

---

that plaintiff cites discusses the Colorado Supreme Court's holding in *Padilla v. Industrial Commission of Colorado*, 696 P.2d 273 (Colo. 1985), *superseded by statute*, Ch. 77, sec. 2, § 8-53-105, 1985 Colo. Sess. Laws 355, 355, *as recognized in England v. Amerigas Propane*, 395 P.3d 766, 770 (Colo. 2017), that a plaintiff does not waive his statutory right to reopen a claim for workers' compensation benefits by executing a written settlement of his initial claim.  *Id.* at 274.  In reaching that holding, the court relied on provisions unique to Colorado's workers' compensation scheme, as well as judicial decisions interpreting those provisions.  *Id.* at 277-80.

*Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 682 (10th Cir. 2001) (unpublished)).

The cases Ms. Mischek cites involving settlement agreements do not mandate a contrary conclusion. Those cases involve statutory schemes and public policy considerations that differ from the considerations present in this case. *See Strike Four, LLC v. Nissan North Am., Inc.*, 64 A.3d 936, 941-48 (N.H. 2013) (finding that settlement agreement was unenforceable where statute expressly provided that agreements inconsistent with statutory scheme would be considered void as contrary to public policy); *General Steel Domestic Sales, LLC v. Steel Wise, LLC*, No. 07-cv-01145-DME-KMT, 2009 WL 185614, at *10-11 (D. Colo. Jan. 23, 2009) (holding that settlement provisions prohibiting law enforcement personnel and customers from voluntarily cooperating with third parties in litigation involving corporation were void as contrary to public policy); *Obrecht v. Electrolux Home Prod., Inc.*, 2005 WL 578477, at *6-7 (N.D. Iowa Mar. 9, 2005) (holding that settlement agreement condoning termination of employment relationship following employee's filing of workers' compensation claim was void as against Iowa's public policy prohibiting retaliatory discharge). Nor is Ms. Mischek's reliance on *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759 (Colo. 1989), persuasive. *Kral* held that a release-trust agreement limiting an insurer's liability for UIM benefits was unenforceable to the extent that it impaired the ability of the insured to receive full compensation for her loss. *Kral*, 784 P.2d at 763-764. But, as the court observed in *Archuleta*, *Kral* "did not say that insured parties were *required* to accept nothing less than full compensation for their losses." *Archuleta*, 2017 WL 3157947, at *2.

For these reasons, the Court finds that the parties' accord and satisfaction as to Ms. Mischek's claim for UIM benefits is not unenforceable as contrary to public policy. Because both Ms. Mischek and Ms. Christensen accepted payment from State Farm to settle their UIM claims, the doctrine of accord and satisfaction bars them from seeking additional UIM benefits that they allege were unlawfully withheld. *See Hinkle v. Basic Chemical Corp.*, 431 P.2d 14, 16 (Colo. 1967) ("[A]ccord and satisfaction can be pleaded in bar of a suit upon the old contract."). State Farm is therefore entitled to summary judgment on plaintiffs' claims for breach of contract and declaratory relief.[12]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the parties' Joint Motion for Hearing On the Parties' Pending Dispositive Motions [Docket No. 80] is **DENIED**. It is further

**ORDERED** that State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment Re: (1) Enforcement of Settlement; and (2) Accord and Satisfaction [Docket No. 58] is **GRANTED**. It is further

**ORDERED** that plaintiff Patricia Mischek's first claim for relief is dismissed with prejudice. It is further

**ORDERED** that plaintiff Skuya Christensen's first and second claims for relief are dismissed with prejudice. It is further

---

[12]Given the Court's determination that Ms. Christensen is not entitled to additional UIM benefits, her claim for a declaratory judgment that State Farm "wrongfully denied payments under UM/UIM coverage" necessarily fails. Civil Action No. 17-cv-00041, Docket No. 4 at 6, ¶ 48.

**ORDERED** that Plaintiff Skuya Christensen's Motion for Partial Summary Judgment [Docket No. 39] and State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment Re Non-Retroactive Application of *Calderon* [Docket No. 52] are **DENIED AS MOOT**.  It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.


DATED March 29, 2018.

BY THE COURT:


 s/Philip A. Brimmer                                    
PHILIP A. BRIMMER
United States District Judge